578 A.2d 624

Brian J. REICE, et al., Petitioners,

v.

COMMONWEALTH of Pennsylvania, UNEMPLOYMENT
COMPENSATION BOARD OF REVIEW, Respondent.

Commonwealth Court of Pennsylvania.

Argued May 3, 1990.

Decided Aug. 6, 1990.

Reargument Denied Sept. 12, 1990.

Robert G. Rothstein, with him, Bernard N. Katz, Meranze & Katz, Philadelphia, for petitioners.

No participation by respondent.

David J. Moloznik, Fell & Spalding, Philadelphia, for intervenor, Fleming Companies, Inc.

Before CRAIG and PALLADINO, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

Petitioner, Brian J. Reice (Reice) appeals from an order of the Unemployment Compensation Board of Review (Board) which affirmed a referee's decision denying Reice unemployment compensation benefits.

Fleming Companies, Inc. (employer) had two warehouse facilities, one in Philadelphia (Frankford), PA and one in Oaks (Oaks), PA. On August 3, 1988, Union Local # 500, who was involved in a labor dispute with the employer, went out on strike and placed pickets at both facilities.

Members of Local #169 (claimants)[1] did not have a contract dispute with employer; however, claimants did not attempt to cross the picket lines and go to work because of threats of violence allegedly made by Local #500 members.

■ Reice now requests our review of the Board's decision denying compensation. He contends that the decision of the Board was in error in determining that Reice participated in a work stoppage; ignoring testimony of threats justifying Reice's refusal to cross another union's picket line; and by denying benefits to additional eligible claimants by failing to determine the appropriate class of claimants.[2] These issues will be addressed *in seriatim*.

■ In addressing Reice's argument that the Board erred in determining that Reice participated in a work stoppage, we initially refer to § 402(d) of the Pennsylvania Unemployment Compensation Law[3] (Act). Section 402(d) bars a claimant from receiving compensation for any week in which his employment was due to a stoppage of work which existed because of a labor dispute, other than a lockout. This section is inapplicable, however, if it is shown that: (1) he is not participating or directly interested in the labor dispute causing the work stoppage; (2) he is not a member of the organization participating or directly interested in the labor dispute causing the work stoppage; and (3) he does not belong to a grade or class of workers of which, immediately prior to the commencement of the work stoppage,

1. The record indicates that 157 individual claimants were eligible to apply for unemployment compensation benefits. Both counsel for claimants and counsel for the employer agreed that *Reice* would serve as the lead case in determining eligibility for purposes of unemployment compensation benefits of Reice, and those co-workers similarly situated. Original Record at Item No. 10, p. 6.

2. Our scope of review is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law has been committed or whether constitutional rights have been violated. *Estate of McGovern v. State Employees' Retirement Board*, 512 Pa. 377, 517 A.2d 523 (1986).

3. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(d).

there were members employed at the site of the stoppage who were participating or directly interested in the dispute.

Relevant findings of the Board indicate that:

5) Picket lines were established on August 3, 1988 by members of Local # 500 at both facilities.

6) The claimant, and other members of local # 169, were scheduled to work on August 4, 1988.

12) The claimant did not report to work on or after August 4, 1988, due to his reluctance to cross the picket line for fear of person and property.

13) The claimant never tried to cross the picket line.

14) The claimant never reported any threats to the employer or the police.

15) There was no violence on the picket lines at either the Frankford or Oaks facilities.

16) The membership of local # 169 was co-mingling with the membership of the local # 500 on the picket line of the Frankford facility.

(Original Record, Item No. 36.)

Based upon these findings of fact, the Board determined that Reice had honored the peaceful picket line, thereby participating in the work stoppage. Consequently, the decision of the referee was affirmed and benefits were denied.

The employer presented testimonial evidence of managers at both of its facilities. These witnesses included two human resource managers, one at Oaks and one at Frankford; two security managers, one at Oaks and one at Frankford; and a distribution manager at Oaks. The human resource manager at Oaks testified that on June 13, 1988 a letter went out to all employees, including Local # 169, advising that contract negotiations were underway but that there was "plenty of work for all" associates at "both the Frankford and Philadelphia" (Oaks) divisions.[4] He also testified that a memo was posted on August 3, 1988 advising employees that work would be available in the

4. Original Record Item No. 10, Exhibit No. 1.

event of a strike and that the employer would take ample precautions to insure the safety of the person and property of employees.

The security manager of Oaks testified that he did not see any Local # 169 members try to cross the picket line and be refused. Neither did he ever receive any complaints by Local # 169 members regarding their inability to cross lines. The distribution manager at Oaks further testified that he was working on the night the strike began and that a number of Local # 169 employees were already in the building who had punched in and who could have stayed and worked but instead left the building without punching out. The testimony of managers at the Frankford facility reiterated the testimony of the Oaks managers. Reice himself testified that he made no attempt to cross the picket line, was not told by anyone in management not to report to work, made no attempt to contact the employer, and never received any personal injury by any person picketing the lines.

It is well established that the Board is the ultimate factfinder and that findings of fact made by the Board are conclusive on appeal when the record contains substantial evidence to support those findings. *Peak v. Unemployment Compensation Board of Review*, 509 Pa. 267, 501 A.2d 1383 (1985); *Taylor v. Unemployment Compensation Board of Review*, 474 Pa. 351, 378 A.2d 829 (1977). The record in the instant case is replete with evidence that Local # 169 members were not barred entry to the work facility, did not attempt to cross the picket lines, were advised on numerous occasions that the employer had ample work available at both sites, and that the employer had taken precautions to insure the safety of its employees. Hence, there is sufficient evidence to support the determination of the Board that Reice participated in a work stoppage.

Reice's second contention, that the Board ignored testimony of threats justifying refusal to cross picket lines, also lacks merit. Two witnesses, in addition to Reice, testified on behalf of the claimants. One witness testified

that he never received any personal injury or property damage by any Local # 500 members; he was just afraid of what would occur if he crossed the picket line. He further stated that he did not make any attempt to contact the company and never filed any complaints with the company or police relative to comments received by picketers from Local # 500. The second witness echoed the testimony of the previous witness.

As was concluded in *Unemployment Compensation Board of Review v. G.C. Murphy Co.*, 19 Pa.Commonwealth Ct. 572, 339 A.2d 167 (1975), a claimant who refuses to cross a picket line at the employer's premises does not carry his burden of proving eligibility for benefits by expressions of fear for his personal safety without proof of violence or threats of violence that have the purpose and effect of preventing a claimant from working and which must be accompanied by a show of force sufficient to instill in a reasonable person a genuine fear for his personal safety. The record is devoid of evidence of either actual violence directed at claimants and/or threats of violence accompanied by a show of force. To the contrary, there is evidence that during the strike period the employer had additional security at the facilities, no threats or complaints of violence were seen or reported, and members of the civil disobedience squad of the Philadelphia police department were present at the Frankford facility throughout the entire first week of the strike. The Board was justified in determining there was insufficient evidence of threats to justify claimants' refusal to cross picket lines.

■ Finally, Reice argues that the Board failed to determine the appropriate class of claimants thereby denying benefits to additional eligible claimants. We first note that the decision by the Board references Reice as the lead case. In addition, the Board's hearing order stated that the scheduled hearing concerned the claims of an attached list of claimants. The attached list included all 157 claimants, listed Reice as the lead case, listed all social security numbers, and listed all appeal numbers. At the hearing both counsel for claimants and counsel for the employer agreed

that Reice would determine eligibility for all co-workers and similarly situated individuals.

As the Supreme Court has determined, "[t]aking one appeal from several judgments is not acceptable practice and is discouraged...." *General Electric Credit Corp. v. Aetna Casualty and Surety Company,* 437 Pa. 463, 469, 263 A.2d 448, 452 (1970). However, where circumstances have permitted, courts have refrained from quashing the whole appeal. Those circumstances include: (1) nearly identical issues, (2) no objection to one appeal, and (3) expiration of the appeal period. *Luzzi v. State Horse Racing Commission,* 120 Pa.Commonwealth Ct. 215, 217 n. 1, 548 A.2d 659, 660 n. 1 (1988). As the issues raised in all of the similarly situated cases are identical, as counsel had stipulated that a determination in Reice would determine eligibility for all similarly situated individuals, and as the appeal period had expired in a number of these cases, the decision in this case is equally applicable to the other 156 individual claimants. *General Electric Credit Corp.; Luzzi.* The Board did not deny compensation to additional eligible claimants.[5]

Accordingly, the decision of the Board denying unemployment compensation benefits is affirmed.[6]

## ORDER

AND NOW, this 6th day of August, 1990, the decision of the Unemployment Compensation Board of Review is hereby affirmed.

5. Further, a March 16, 1990 order of this Court determined that the within appeal shall be treated as also embracing all claimants similarly situated at the Frankford and Oaks facilities pursuant to *Turtzer v. Unemployment Compensation Board of Review,* 111 Pa.Commonwealth Ct. 549, 561, n. 9, 534 A.2d 848, 853, n. 9 (1987).

6. Claimants' Motion to Strike Brief of Employer as untimely is dismissed for two reasons. First, claimant's motion to strike was not properly raised as it was presented in the claimants' brief as a preliminary matter and was not presented in the statement of questions involved. Pa.R.A.P. 2116(a). Second, the employer, who prevailed before the referee and the Board, need not have filed a brief. However, filing a brief subsequent to the April 10, 1989 remand hearing, after all of the testimony was heard, was not improper.